UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| COUNTER WRAPS INTERNATIONAL, INC., | Case No. 2:16-CV-2924 JCM (CWH) |
| Plaintiff(s), | ORDER |
| v. | |
| DIAGEO NORTH AMERICA, INC., et al., | |
| Defendant(s). | |

Presently before the court is defendants Diageo North America, Inc. and Diageo America, Inc.'s (collectively "Diageo") motion to for summary judgment. (ECF No. 37). Plaintiff Counter Wraps International, Inc. ("Counter Wraps") filed two responses (ECF Nos. 39, 40), to which defendants filed two replies (ECF Nos. 41, 42).

**I.    Facts**

This action arises from a contract dispute between Counter Wraps and Diageo. (ECF No. 31). Counter Wraps designs, manufactures, and installs an advertising product called a "wrap." *Id*. Wraps are custom designed displays that businesses apply to various surfaces, such as the side of buildings, vehicles, or store windows. *Id*. Diageo is one of the worlds largest suppliers of alcohol. *Id*.

From 2007 through 2013, Diageo was in the process of developing Nuvo, a sparkling pink liquor. (ECF No. 37-7). Diageo had an ownership interest in Nuvo through its subsidiary, SVL, Inc. ("SVL"), which had an ownership interest in London Group, LLC ("London Group")—the business entity that directly owned Nuvo. (ECF Nos. 37-7, 39-7). Diageo was also the exclusive supplier of Nuvo and provided the marketing budget for the product. (ECF No. 37-7). Raphael

Yakoby, the creator and former owner of Nuvo, was involved as a marketing point-person in Diageo's efforts to develop Nuvo. (ECF No. 49).

In August 2010, Diageo used Yakoby to engage in business communications with Dan Curtin, Counter Wraps' CEO, to negotiate an agreement for the purchase of wraps. (ECF No. 37-7, 39-2, 39-12). Normally, the market value of a wrap exceeds $2,500 per unit. (ECF No. 31). However, Yakoby proposed to purchase wraps at $1,500 per unit in exchange for a guarantee that Diageo would purchase 5,000 wraps for the 2011 fiscal year. *See* (ECF No. 39-20).

Throughout the remainder of August 2010, Brian Smith, Diageo's brand manager for Nuvo, Yakoby, and Curtin set out to finalize the agreement. (ECF No. 31, 39-23). In the process of doing so, the parties changed various terms. Diageo would still purchase 5,000 wraps at Yakoby's proposed price, but Counter Wraps would receive payments in accordance with a payment schedule. *Id*.

On September 9, 2010, Curtin, executed a written document ("Nuvo Agreement") that memorialized the terms for the purchase of wraps. (ECF No. 1-1). On September 17, 2010, an unknown individual signed the agreement on behalf of Nuvo. (ECF Nos. 1-1, 37, 39). Around this time, representatives from Counter Wraps, including Curtin, met with Diageo's senior officials at Diageo's headquarters in Norwalk, Connecticut, in order to discuss the Counter Wraps and Diageo's performance. (ECF No. 39-8).

Between Fall 2010 and March 2011, Counter Wraps designed, produced, and installed approximately 2080 wraps for Diageo. (ECF No. 39-4). Diageo paid Counter Wraps in accordance with the Nuvo agreement. (ECF No. 37-15, 37-18, 39-28, 39-29). Counter Wraps received these payments through an intermediary, Niche Marketing. *Id*.

In fall 2010, Diageo was having significant budgeting issues with respect to Nuvo. (ECF No. 39-8). On February 3, 2011, Diageo's manager for Nuvo, Seth Yassky, told Counter Wraps to halt additional Nuvo installations due to budget constraints. (ECF Nos. 37, 39). In May 2011, Diageo ordered another 333 Nuvo wraps for the upcoming holiday season but did not otherwise continue to purchase wraps. (ECF No. 37-25).

Over the next few years, Counter Wraps' production remained on pause. (ECF No. 39-8). Curtin would periodically inquire about the status of the Nuvo project, to which Diego would always reiterate that it did not wish to order further wraps. *Id*. To date, Counter Wraps manufactured and installed only approximately half of the 5,000 Nuvo wraps and Diageo has paid $3.3 million of the total $7.5 million contract price. (ECF No. 31).

In early 2016, one of Counter Wraps' employees allegedly found out from a store owner that Diageo had sold Nuvo, which led Counter Wraps to initiate this litigation in state court on October 20, 2016. (ECF Nos. 1-1, 31). On December 16, 2016, defendants removed this case to federal court. (ECF No. 1).

After several months of discovery, Counter Wraps learned that Diageo had a $12 million advertising budge for the 2011 fiscal year. (ECF Nos. 31, 29-10). Discovery also revealed that Diageo considered its agreement with Counter Wraps to be subject to revision and that Diageo's payment of the $7.5 million contract price would depend on Nuvo's sales performance. (ECF Nos. 31, 37, 39). Counter Wraps accordingly filed an amended complaint on November 28, 2017, adding two causes of action: (1) fraud in the inducement and (2) negligent misrepresentation. (ECF No. 31).

On September 24, 2018, the court granted in part and denied in part Diageo's motion to dismiss (ECF No. 34), dismissing Counter Wraps' negligent misrepresentation claim. (ECF No. 49). Now, Diageo moves for summary judgment. (ECF No. 37).

## II.    Legal Standard

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to be

entitled to a denial of summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, a court applies a burden-shifting analysis. The moving party must first satisfy its initial burden. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the

pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

**III.    Discussion**

Diageo argues that the court should enter summary judgment on Counter Wraps' claims for fraud in the inducement and breach of contract because Counter Wraps did not timely assert those claims. The court agrees.

*a.   Fraud in the inducement*

The statute of limitations requires a cause of action for fraud to be brought within three years. Nev. Rev. Stat. § 11.190(3)(c)-(d); *Nevada State Bank v. Jamison Fam. Part.*, 801 P.2d 1377, 1382 (Nev. 1990). The limitations period starts to accrue upon discovery of the facts constituting the fraud. Nev. Rev. Stat. § 11.190(3)(d).

Although Diageo's allegedly fraudulent acts occurred in 2010, Counter Wraps claims that it learned about those acts during discovery when it found out that Nuvo's budget for the 2011 fiscal year was $12 million. (ECF No. 31). Counter Wraps argues that Diageo's budget revealed that Diageo agreed to pay $7.5 million for wraps without any intention to fully perform. (ECF No. 39).

Discovery of Diageo's budget was sufficient to put Counter Wraps on notice that Diageo may have committed fraud. However, Counter Wraps first learned that Diageo's budget was inadequate on February 3, 2011, when Yassky told Counter Wraps to halt additional Nuvo installations due to budget constraints. *See* (ECF Nos. 37, 39). Thus, the limitations period began to accrue in 2011.

James C. Mahan
U.S. District Judge

Counter Wraps brought this action in October 2016, well after the limitations period had run.  (ECF No. 1-1).  Therefore, the court will grant summary judgment on Counter Wraps' claim for fraud in the inducement.

   *b.  Breach of contract*

The limitations period for a written contract is six years.  Nev. Rev. Stat. 11.190(1)(b).  The limitations period for an oral contract is four years.  Nev. Rev. Stat. 11.190(2)(c).  Counter Wraps initiated this action approximately five and a half years after Diageo's alleged breach.  *See* (ECF No. 1-1).  Therefore, the statute of limitations bars Counter Wraps' claim for breach of contract only if the agreement between Diageo and Counter Wraps is an oral contract.

Diageo argues that there does not exist a written contract because Diageo did not sign the Nuvo Agreement.  (ECF No. 37).  Indeed, the Nuvo Agreement does not name Diageo as a party and Counter Wraps has not provided any evidence showing that Diageo or its agent signed the written document.  *See* (ECF No. 1-1).  Therefore, Diageo did not enter into a written agreement with Counter Wraps.  *See May v. Anderson*, 119 P.3d 1254, 1257 (Nev. 2005) (holding that basic contract principles require acceptance).

Counter Wraps argues that, even if the agreement between Diageo and Counter Wraps was an oral contract, the statute of limitations does not bar its claim because Counter Wraps did not discover that Diageo breached the contract until 2016.  (ECF No. 39).

Nevada follows the discovery rule, which holds that a claim accrues when a claimant knows or should have known the facts giving rise to the claim for relief.  *See Bemis v. Estate of Bemis*, 967 P.2d 437, 440 (Nev. 1998).  Courts regularly apply the discovery rule to contract actions.  *See Raymond G. Schreiber Revocable Trust v. Estate of Knievel*, 984 F. Supp. 2d 1099, 1111 (D. Nev. 2013); *see also Kim v. Axa Financial, Inc.*, No. 2:07-cv-0346-RLH-RJJ, 2008 WL 11388671 at *6 (D. Nev. Nov. 21, 2008).

The uncontroverted evidence before the court shows that Counter Wraps was aware of Diageo's alleged breach when Diageo unilaterally and indefinitely suspended performance on February 3, 2011.  (ECF Nos. 37, 39).  Counter Wraps initiated this lawsuit more than four years later, on October 20, 2016.  (ECF No. 37).  Therefore, the statute of limitations bars Counter

Wraps' claim for breach of contract.   Nev. Rev. Stat. 11.190(2)(c) (providing that the limitations period for an oral contract is four years).

**IV.    Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that Diageo's motion to for summary judgment (ECF No. 37) be, and the same hereby is, GRANTED.

The clerk shall enter judgment accordingly and close the case.

DATED March 15, 2019.

_____
UNITED STATES DISTRICT JUDGE

James C. Mahan
U.S. District Judge